# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

NATHANIEL JORDAN,

        Plaintiff,

    v.                                              Case No.  07-C-453

WARDEN JEFFREY P. ENDICOTT,

        Defendant.

## DECISION AND ORDER

Nathaniel Jordan, an inmate at Red Granite Correctional Facility, filed a petition for a writ of habeas corpus with this court pursuant to 28 U.S.C. § 2254, in which he challenges the sentence imposed after he pled guilty to First Degree Recklessly Endangering Safety While Armed and Possession of a Firearm by a Felon.  He claims that the trial court based his sentence on inaccurate information in violation of his Fourteenth Amendment due process rights.  Because the state court decisions in his case were neither contrary to nor involved an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts, Jordan's petition will be denied.

## I.  Background

On October 16, 2002 Jordan and his girlfriend Cynthia Arnett got into an argument at her home.  Arnett's stepsister and her daughter were present, as were two of Arnett's daughters.  (Jordan Pet. at Attach. 118.)  The argument moved to Arnett's bedroom and shortly thereafter, Jordan

brandished a firearm. (Jordan Pet. at Attach. 102, ¶ 3.) Arnett grabbed for the gun and was shot in the shoulder in the ensuing struggle for control of the weapon. Jordan then fled the scene with the weapon, which was not recovered. (Jordan Pet. at Attach. 161.)

Arnett told the police at the scene that she and Jordan "went into the bedroom . . . [Jordan] shut the bedroom door . . . [and] brandished a firearm at her." (Answer, Ex. B at ¶ 3.) Arnett's children also stated that Jordan and Arnett "went into the bedroom . . . shut the door and continued arguing." (*Id*.)

On July 7, 2003 Jordan pled guilty to charges of first degree recklessly endangering safety while armed and possession of a firearm by a felon in violation of Wis. Stats. §§ 941.30(1) and 941.29(2). In exchange for Jordan's guilty pleas, the habitual criminal penalty enhancers were dismissed and Jordan was not charged for violating a no-contact order by calling Arnett over 100 times. Jordan was sentenced on August 28, 2003. The prosecutor argued that an appropriate sentence would be ten years imprisonment and five years of extended supervision on the charge of First Degree Recklessly Endangering Safety While Armed, with the sentence for being a Felon in Possession of a Firearm to run concurrently. (Jordan Pet. at Attach. 145.) Jordan requested a sentence of two years imprisonment for both charges, to run concurrently. The court sentenced Jordan to seven years imprisonment and five years of extended supervision on the recklessly endangering safety charge and a consecutive two years imprisonment and three years of extended supervision for being a felon in possession of a firearm. (*Id.*; Answer, Ex. A.)

At the sentencing hearing, the assistant district attorney stated that Jordan "pulled [Arnett] into a room. He shut the door, the door locked. . . . They had an argument. [Jordan] pulled out a firearm. It was loaded. He aimed it at the victim. It was intended to be used as an instrument of

2

intimidation, that is, to make the victim comply with the acquiescence in the argument." (Jordan Pet. at Attach. 147.) The prosecutor also made reference to the child witnesses in the case having seen Jordan "take" Arnett into the bedroom (*id.* at 148) and detailed what he perceived to be Jordan's efforts to intimidate and coerce the victim and witnesses (*id.* at 132-33).

Jordan filed a motion for post-conviction relief on April 14, 2004 requesting re-sentencing or a sentence modification because he believed that the sentencing court based its decision on the inaccurate depiction of how he and Arnett came to be in the bedroom. (*Id.* at 108.) The court denied the motion, stating that although it believed Jordan had forced or pulled Arnett into the bedroom, it in no way based its sentence on that belief. (*Id.* at 108-09.)

> Whether the defendant pulled her, took her, followed her or was 'just there' in the bedroom had no virtual impact on the particular sentence imposed by the court. The mere fact that he was in possession of a gun when he shouldn't have been, that he had a substantial criminal record, that he didn't seem to learn from his past conduct, and that he committed a very serious weapons offense in the presence of children all combined to cause the court to impose the sentence it did. Neither re-sentencing nor modification is warranted on this basis.

(*Id.* at 109.) Jordan appealed his conviction and the denial of his motion for post-conviction relief. (Endicott Br. at 3.)

The Wisconsin Court of Appeals assumed that Jordan met his burden of establishing that the information in question (the manner in which Jordan and Arnett came to be in the bedroom) was inaccurate. (Jordan Pet. at Attach. 104.) The Court of Appeals found that the sentencing court's assertion of reliance on Jordan's prior record, the nature of the crime itself, and Jordan's personal character was consistent with the record, and that the sentencing court did not rely on any inaccurate information. (*Id.* at 106.) Having found that the court did not rely on the allegedly inaccurate information, and that the information was not "highly relevant to the imposition of sentence," the

3

court found that no new factor existed upon which Jordan could be entitled to re-sentencing. (*Id.* at 106-07.) Jordan's sentence was accordingly affirmed. (*Id.* at 107.) The Wisconsin Supreme Court denied Jordan's petition for review. (Answer, Ex. C.) Jordan thereafter filed this petition for a writ of habeas corpus. (Endicott Br. at 4.)

## II. Analysis

Under 28 U.S.C. § 2254(a), federal courts are permitted to grant habeas corpus relief to a state prisoner only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) restricted habeas corpus relief for state prisoners whose claim had been adjudicated on the merits in state court. *See* 28 U.S.C. § 2254(d)(1)-(2). Such a defendant's petition may be granted only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id.* § 2254(d)(2). Any factual issues determined by the state courts are presumed to be correct, and the petitioner must rebut that presumption by clear and convincing evidence. *Id.* § 2254(e)(1).

A state court decision is contrary to clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law" promulgated by one or more Supreme Court decisions. *Williams v. Taylor,* 529 U.S. 362, 405 (2000). An unreasonable application of clearly established federal law occurs when the correct legal rule is identified, but it is unreasonably applied to the facts at issue. *Id.* at 407. An unreasonable application can also occur if the state court

4

"unreasonably extends a legal principle to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* In order to show that a law is clearly established by the Supreme Court, a petitioner must show that the rule is "compelled by existing precedent." *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996) (quoting *Saffle v. Parks*, 494 U.S. 484, 488 (1990)).

Petitioner Jordan argues that the sentencing court relied on the prosecutor's inaccurate statements that Jordan pulled, took, or otherwise forced Arnett into the bedroom in which she was subsequently shot. (Jordan Br. at 5.) The court adopted the allegedly inaccurate information at sentencing, without objection by Jordan's attorney. (Jordan Pet. at Attach. 161.) In order for a defendant to be granted re-sentencing on the grounds that the sentence in question was based on inaccurate information, the defendant must establish that the information was inaccurate and that the sentencing court relied on that information when imposing sentence. *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003). Reliance on the inaccuracy can be shown if the court gives "explicit attention" to the inaccurate information, bases its sentence "at least in part" on that information, or "gives specific consideration" to the inaccurate information before imposing the sentence. *United States v. Tucker,* 404 U.S. 443, 447 (1972).

Even if Jordan is correct and the prosecutor and the sentencing court inaccurately stated the manner in which he and Arnett arrived in the bedroom, Jordan cannot meet his burden of establishing that the court relied on that information when imposing sentence. The mere reference to an inaccurate fact by the sentencing judge is not enough to establish reliance. *See Lechner,* 341 F.3d at 640. The court on Jordan's motion for post-conviction relief and the Wisconsin Court of Appeals both found that the sentencing court did not rely on the manner in which the couple arrived

5

in the bedroom.  (Answer, Ex. B at ¶ 12.)  Whether this is a "fact" found by the state courts, 28 U.S.C. § 2254(e)(1), or a conclusion of law, Jordan simply cannot show that the allegedly erroneous information had any impact on his sentence.[1]  The sentencing judge stated that he relied upon Jordan's character, employment history, education, "chemical usages," previous criminal history, and the gravity of the offense when he sentenced Jordan.  (Answer, Ex. B at ¶ 10.)

In its post-conviction motion ruling, the sentencing court explained further:

> [The sentence] was based primarily on the defendant's prior criminal history and his inability to conform his conduct as evidenced by the multiple offenses of which he was convicted, plus the fact that many of the offenses were committed while he was on probation or parole, and the many revocations of his probation or parole. These factors, and the absolute need for community protection, were the driving force behind the court's sentences. . . . The how or why the defendant and the victim reached the bedroom prior to the commission of the offense was completely insignificant in the total picture painted of the defendant, his character, and his background for sentencing purposes. . . . The mere fact that he was in possession of a gun when he shouldn't have been, that he had a substantial criminal record, that he didn't seem to learn from his past conduct, and that he committed a very serious weapons offense in the presence of children all combined to cause the court to impose the sentences it did.

(Answer, Ex. E at 4-5.)

The Wisconsin Court of Appeals found the sentencing court's reasoning to be both persuasive and supported by the record.  (Answer, Ex. B at ¶ 12.)

> [W]hen imposing sentence, the court focused on Jordan's character, his prior criminal record, and the danger that his conduct created both for Arnett and the children in the house. . . . We conclude that the court did not rely on the prosecutor's

---

[1]*Lechner* does not specifically address whether a state court's determination of *reliance* on the erroneous fact is a question of fact or law.  It does suggest, however, that a petitioner in Jordan's position would have to show by clear and convincing evidence that the sentencing court actually did rely on the erroneous information.  *Id.* at 640 ("[W]hile Lechner does show that the circuit court mentioned the convictions, he does not propound clear and convincing evidence that demonstrates that the Wisconsin Supreme Court unreasonably found that the district court did not rely on those convictions in sentencing.")

6

comments that suggested that Jordan forced Arnett into the bedroom and, therefore, did not violate Jordan's due process right to be sentenced upon accurate information.

(*Id.*)

These findings of fact by the sentencing court and the Wisconsin Court of Appeals are supported by the record, and Jordan has not shown that the state courts' findings were unreasonable. He has offered no proof – other than the fact that the sentencing court mentioned the disputed manner of entry to the bedroom – that the information was relied upon in determining his sentence. As in *Lechner*, the state courts' analysis "comported with the correct due process considerations set forth in *Tucker*," and therefore was not contrary to clearly established federal law as determined by the Supreme Court of the United States. *See* 341 F.3d at 639.

At the time of his sentencing, Jordan had been arrested almost 50 times. (Jordan Pet. at Attach. 145.) As an adult, Jordan was convicted of receiving stolen property, possession with the intent to deliver a controlled substance, theft from a person, battery, burglary, possession of a controlled substance, and possession of drug paraphernalia – some multiple times. (*Id*. at Attach. 146.) At least four of those convictions were for felonies. (*Id*.) He was placed on probation and subsequently revoked at least five times, and was given mandatory release from prison and was subsequently revoked from release at least four times. (*Id*. at Attach. 146-47.) He unlawfully carried a concealed firearm and brandished it during a heated domestic dispute when there were multiple children present, which resulted in his girlfriend being shot and severely injured. (*Id*. at Attach. 147-48.)

The nature and circumstances of the offense, combined with Jordan's criminal record and the fact that prior lenient sentences were ineffective to control his behavior strongly support the state

7

courts' conclusion that the sentence given was proper and was not based on inaccurate information. It appears that even if Jordan and Arnett had walked hand-in-hand into the bedroom with smiles on their faces it would not have altered Jordan's sentence, and he has offered no evidence that the sentencing was contrary to, or an unreasonable application of, clearly established federal law, nor has he shown (much less by clear and convincing evidence) that the state courts unreasonably determined that the sentencing judge did not rely on inaccurate information. Accordingly, his petition for a writ of habeas corpus is denied.

**SO ORDERED** this ___15th___ day of July, 2008.

 s/ William C. Griesbach
William C. Griesbach
United States District Judge